(Not for Publication) (Docket Entry No. 2, 5 )

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
DONALD F. MANNO,                    :
                                    :
           Plaintiff,              :   Civil No. 08-3254 (RBK)
                                    :
           v.                      :   **OPINION**
                                    :
CHRISTOPHER J. CHRISTIE, United     :
States Attorney, MATTHEW SMITH,     :
Assistant United States Attorney, JOSEPH :
L. GILSON, Special Agent, Federal Bureau :
of Investigation, and JOHN DOES 1-5, :
                                    :
           Defendants.             :
_____:

**KUGLER,** United States District Judge:

      This matter comes before the Court on the verified Complaint and Motion for Preliminary Restraints of Plaintiff Donald F. Manno ("Plaintiff"). The defendants are United States Attorney Christopher Christie, Assistant United States Attorney Matt Smith, and FBI Special Agent Joseph Gilson ("Defendants" or "the government"). Christie has filed an opposition to the preliminary restraints as well as a motion to dismiss or, in the alternative, for summary judgment on Manno's claims. For the reasons that follow, Manno's request for preliminary restraints is denied. The government's motion is denied without prejudice.

I.      BACKGROUND

      Plaintiff Manno is a solo legal practitioner who maintains a law office at 601 Longwood

1

Avenue, Cherry Hill, New Jersey.  Manno has been in private practice for over twenty-five years, and he had approximately 100 active and open files in his office during the time at issue here, most of which were related to criminal defense matters.  According to the Complaint, on May 7, 2008, the government applied for a search warrant to search Manno's law offices for "approximately sixteen broad categories of documents and things 'pertaining to' 43 listed individuals or entities from August 1, 2006 to the present" as part of an ongoing investigation into criminal activity.  (Compl. ¶ 12.)  Magistrate Judge Ann Marie Donio authorized the warrant, which was executed on May 8.  The search team will apparently have no further role in the investigation, and the case agents in charge of the investigation did not participate in the search.

In the course of executing the warrant, agents of the government inspected numerous files connected with clients other than the 43 enumerated individuals.  FBI agents copied the hard drives of six computers in Manno's office and coped other external storage devices (including thumbdrives and CDs) as well.  According to the Complaint, these electronic files include information on all the clients of the Manno firm for the past 15 years, including both open and closed matters.  Manno alleges that Defendants did not try to first determine whether the hard drives and storage devices seized contained any information covered by the warrant; instead, they simply seized and copied all the electronic files.  Some hard drives were copied at Manno's office; three laptops were taken from the office. (One remains in government custody; two were presumed copied and then returned, though the copying process turned out not to have worked.)

The government has not yet viewed the electronic material seized.  The government's plan to review the material includes a preliminary review by FBI Special Agent Michael O'Brien to

determine responsiveness to the warrant, with documents determined to be responsive to be next reviewed by AUSA Matt Smith to determine if they are protected by a privilege.[1]

After the search and seizure, Manno filed a verified complaint and a motion for preliminary restraints in this Court on June 30, 2008.  Manno claims the search and seizure violated the attorney-client privilege he holds with his clients and represents an impermissible seizure of his protected attorney work product.  He does not challenge the probable cause determination underlying the warrant.  He alleges that the seizure was overbroad and in violation of the Fourth Amendment.

Manno seeks an injunction barring the government from reproducing, disseminating, inspecting, or reading the electronic files seized; directing the government to immediately return the original hard drives and electronic media seizes as well as any copies made from them; and requiring the government to disclose the names or labels on all the files Defendants inspected.  He also seeks damages for constitutional violations.  When this Court heard oral argument on August 11, 2008, the government represented that the review of the electronic media had not yet begun.  The government was directed to not conduct the review unless and until the Court's ruling permitted it.  This Opinion and Order now follows.

## II.     STANDARD OF REVIEW

The government contends that this motion, though styled as a request for preliminary restraints, is "functionally the equivalent" of a motion for return of property.  A motion for return of property under Federal Rule of Criminal Procedure 41(g) may be made by "any person aggrieved by an unlawful search" and is treated as a civil proceeding for equitable relief.  United

---

[1]This procedure will be discussed in greater detail below.

States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999).  When a motion for return of property is made while a criminal prosecution is pending, the movant bears the burden to show an entitlement to the property, and the motion may be denied if the movant "is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues.'"  Id. at 377 (citing United States v. Van Cauwenberghe, 934 F.2d 1048, 1061 (9th Cir. 1991)).  Other District of New Jersey courts have adopted the Fifth Circuit's test for consideration of a motion for return of property prior to the initiation of criminal proceedings.  The applicable factors under that test are:  (1) whether the Government displayed a callous disregard for the constitutional rights of the movant, (2) whether the movant has an individual interest in and need for the property he wants returned, (3) whether the movant would be irreparably injured by denying return of the property, and (4) whether the movant has an adequate remedy at law for the redress of his grievance.  Johnson v. United States, 971 F. Supp. 862, 866 (D.N.J. 1997); see also United States v. Search of Law Office, Residence, and Storage Unit of Alan Brown, 341 F.3d 404 (5th Cir. 2003) (analogizing pre-indictment motion to suppress evidence from search of law firm to motion to return property).

However, courts in the Third Circuit addressing a motion based a search of a law office where no indictment has been issue have not used Fed. R. Crim. P. 41(g).  Instead, they have employed the standards applicable to a request for a preliminary injunction.  Klitzman, Klitzman, and Gallagher v. Krut, 744 F.2d 955 (3d Cir. 1984); In re Impounded Case (Law Firm), 840 F.2d 196 (3d Cir. 1988); Hartford Assoc. v. United States, 792 F. Supp. 358, 366 (D.N.J. 1992).  The Court follows this example and analyzes the motion as a request for preliminary injunction.

Preliminary injunctive relief is an extraordinary remedy that should only be granted if the

party seeking the injunction can demonstrate: (1) a likelihood of success on the merits; (2) it will suffer irreparable harm if the injunction is denied; (3) granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief. KOS Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)).

### III.    PLAINTIFF'S MOTION

#### A.    Likelihood of Success

Plaintiff argues that the search and seizure was overbroad, because files on all clients and not just the 43 specifically mentioned in the warrant were "rifled" through and computer hard drives containing information on all clients were seized. The government contends that this broad preliminary seizure was necessary in order to discover material within the search warrant's authorization and that it was necessary to remove all the electronic media in order to have a computer technician be able to go through the media to locate all responsive materials.

The Court finds that Plaintiff has not shown that it is likely that he will succeed on his claims that the search was overbroad. Rather, the Court concludes that the search was likely reasonable.

The Third Circuit has twice addressed searches of law firms and has reached different outcomes based on the specification in the warrant and the protections provided to the targets of the warrant. When it first had occasion to consider this issue, the Third Circuit upheld a preliminary injunction preventing the government from viewing material it had seized from a law firm. Klitzman, 744 F.2d 955. The warrant in that case authorized the seizure of all closed or non-active files of personal injury claimants, financial records of the firm, and day-to-day

business communications. Id. at 957. The court found the warrant overbroad, holding that because it allowed the search of all client records and business-related documents without any specifics relating the documents to any particular crime alleged, it "authorized virtually a wholesale search and seizure of the business records of the firm." Id. at 960.

In a later case the Third Circuit overruled the grant of a preliminary injunction on overbreadth grounds, distinguishing Klitzman and noting that the warrant at issue specified the types of financial documents to be seized (lined ledger sheets; papers in closed personal injury files which showed the clients name, and relevant financial information; photocopies of checks; and whole files open or closed containing an orange sticker which was alleged to be indicative of file's participation in insurance fraud scheme). In re Impounded Case (Law Firm), 840 F.2d at 201. The Impounded Case court concluded that "the Klitzman warrant authorized the seizure of any case file not tied to the alleged mail fraud scheme in the supporting affidavit" while the warrant in that case "authorized the seizure of a group of files all of which, according to the affidavit, contained evidence of fraudulent claims," and so the search was permissible and not overbroad. Impounded Case, 840 F.2d at 201.

In this case, the warrant authorized seizure of any and all documents relating to 43 listed clients, as well as seizure of all ledgers, journals, billing statements, invoices, address books, tax returns, and "any and all computer hardware, meaning any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data."

In support of this broad search authorization, Defendants contend that seizure of all the electronic media was necessary to determine what pertained to the 43 clients listed in the warrant,

and that it was necessary to take the computers off-site in order to review their contents. The government argues that these concerns do not invalidate the warrant and must be reviewed for reasonableness. Defendant Special Agent Gilson, in his affidavit submitted in support of the search warrant application, attested that Manno was using computers in furtherance of alleged criminal activity. Gilson attested that to properly retrieve, analyze, document, and authenticate the data, a qualified computer specialists would need to go through the files, which would require seizure of all computer equipment and accessories.

Plaintiff Manno does not claim that his law office was functionally shut down or that he was prevented from running his business, unlike the situation of the plaintiffs in Klitzman. Manno similarly does not face the same situation as the plaintiffs in United States v. Stewart, where multiple sole practitioners shared the same office and it was undisputed that computerized information belonging to lawyers not named in the warrant was seized. United States v. Stewart, Civ No. 02 CR 396, 2002 WL 1300059, * 4 (June 11, 2002).

The warrant in this case authorized a search and seizure that was broad but reasonable. If all of the material in Manno's office was in paper form, government agents could have done a brief review of each document to determine its responsiveness to the warrant. Andresen v. Maryland, 427 U.S. 463, 482 n.2 (1976) ("In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized.") It is therefore reasonable for Agent O'Brien to briefly review each electronic document to determine if it is among the materials authorized by the warrant, just as he could if the search was only of paper files. See United States v. Fumo, Civ. No. 06-319, 2007 WL 3232112, *6 (E.D. Pa. Oct. 30, 2007) ("[T]he

government may open and briefly examine each computer file to determine whether it is within the description recited in the warrant.")  Plaintiff has not met the heavy burden to show that he is likely to succeed in proving that the seizure and this subsequent search is overbroad.

### B. Irreparable Harm

Manno contends that the threat to the confidentiality of his files and the loss of his privilege interest in client communications constitutes irreparable harm.  The court in Klitzman recognized that the effect on third-party clients may constitute irreparable harm where the attorney-client privilege is disregarded by a government search.  744 F.3d at 960-61.  However, the mere fact that documents pertaining to third-party clients may be seized is not itself irreparable harm.  The Third Circuit in Impounded Case authorized a privilege-review procedure involving judicial authorization found to be sufficient to protect privileged communications.  840 F.2d at 199, 202.  See also Hartford Assoc., 792 F. Supp. at 367 (approving procedure where plaintiffs had opportunity to review seized files and subsequent review in camera of files as to which plaintiffs claimed a privilege).

The government here has created a procedure to prevent undue disclosure of protected materials.  They designated AUSA Matt Smith as the Privilege AUSA and FBI Special Agent Michael O'Brien as the Privilege Special Agent.  In reviewing the material, Agent O'Brien will first go through and determine what items are within the scope of the search warrant.  He will then pass along responsive items to AUSA Smith, who will review them for privilege.  If he determines that the items are not privileged, he will turn them over to the prosecution team.  If AUSA Smith finds that an item could be protected by a privilege, he will then determine whether a privilege exception such as the crime-fraud exception applies or whether the privilege has been

waived. If AUSA Smith believes that material may be privileged but either the privilege has been waived or an exception applies, he will hold a "meet and confer" with Manno or any other individual who may have a claim of privilege in an attempt to work out a resolution. Then, if the parties cannot agree on a resolution, AUSA Smith will apply to the Court for a judicial determination on the privilege issue before turning anything over to the prosecution team. Any items found to be not within the scope of the warrant or covered by an effective privilege will be returned to Manno's office without being viewed by any other government agents.

      Manno urges the Court to appoint a Special Master to conduct this review. Though the use of a Special Master or initial review by courts have been authorized in other cases, this Court finds that such measures are not required by the strictures of the Fourth Amendment or by the need to protect the attorney-client privilege. The Court concludes that government review procedures designed to prevent disclosure of privileged information are acceptable as long as the procedures involve judicial authorization before potentially privileged materials are disclosed. The privilege procedures proposed in this case represent a reasonable approach to balancing the need to review the material with the need to prevent disclosure of protected information, especially because there will be later opportunities to challenge the admissibility on privilege grounds of any evidence obtained by the government.

      Manno argues that the potential for seeing materials relevant to other investigations being conducted by the US Attorneys' office weighs against the use of the privilege team in this situation. The Court shares the concern that AUSA Smith, when reviewing the responsive material to see if it is privileged, will see materials relevant to other investigations he is currently a part of or may become a part of in the future. As this is a speculative concern, the Court does

not find this concern to amount to irreparable harm at this stage and cannot indicate now what the proper remedy for this problem will be.  Should AUSA Smith perceive that any materials he reviews are relevant to other investigations with which he is familiar, his review must immediately stop, and he must alert the Court to the situation.  Should subjects of other investigations believe that privileged materials improperly viewed are used against then in a later criminal proceeding, they may move for suppression on those grounds at that time.

  The Court notes that ex parte in camera review of materials is not uncommon, and the Court is well prepared to handle making ex parte decisions regarding privilege when the time arises.  Moreover, though the procedure indicates that the application to the Court for a privilege determination will be ex parte, as a practical matter Manno will already have notice of what the material at issue covers through the "meet and confer" procedure.  Should Manno believe that AUSA Smith errs and determines that a privilege does not apply when Manno believes one should, he will have the opportunity to litigate that issue in any later criminal proceeding and argue for suppression of the evidence based on privilege grounds.

  The Court concludes that the procedure the government has put in place is sufficient to protect potentially privileged information and negates the potential for irreparable harm to Manno or his other clients.

  **C. Harm to the Nonmoving Party**

  Defendants contend that granting Manno the relief he seeks will effectively derail an ongoing grand jury investigation.  This concern was recognized by the Fifth Circuit in <u>Search of Law Office, Residence, and Storage Unit of Alan Brown</u>, 341 F.3d 404 (5th Cir. 2003), where the Court noted that the extensive litigation surrounding a motion to return property filed

pre-indictment had in fact resulted in a protracted interruption of the grand jury proceedings and an evidentiary hearing in front of the district court that turned into a preliminary trial on the merits of the as-yet-non-existent case.  Id. at 414.  That concern is plainly present here as well.

### D. Public Interest

As there is both a strong public interest in permitting the uninterrupted investigation of criminal activity and in protecting privileged communications between attorneys and clients, the public interest does not weigh more heavily on either side.

### E. Conclusion

The Court concludes that preliminary restraints are not warranted in this case, and Plaintiff's motion is denied.  The government may proceed with its review of the electronic materials first for responsiveness and then for protection by an applicable privilege.  The Court emphasizes that additional opportunities remain for Manno to challenge the government's determinations as to these issues, first through the "meet and confer" procedure and next in any criminal prosecution at which seized evidence that he believes was not authorized by the warrant or was privileged is sought to be used against him.

## IV. DEFENDANTS' MOTION

The government asks to have its opposition to Manno's application also considered a motion to dismiss or, in the alternative, for summary judgment on Manno's Complaint, which in addition to the request for preliminary restraints also seeks damages for alleged violations of the Fifth and Sixth Amendment rights of his clients.  The government does not offer any additional argument for why these claims should be dismissed, and the Court denies the request for dismissal or summary judgment without prejudice.

V.      CONCLUSION

       Plaintiff's request for preliminary restraints is denied.  Defendants' motion for dismissal or summary judgment is denied without prejudice.  An accompanying order will issue today.


Dated:   8-22-2008                                             /s/ Robert B. Kugler
                                                                                ROBERT B. KUGLER
                                                                                United States District Judge